MARVINS CREDIT, Inc.

v.

HOWARD UNIVERSITY.

No. 1394.

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 16, 1953.

Decided Dec. 15, 1953.

1. Code 1951, 15–304.

2. It may be noted that Calloway has taken
no part in any of the proceedings.
Judgment against him was by default.

Abraham Chaifetz, Washington, D. C.,
Harold Jacobstein, Washington, D. C., on
the brief, for appellant.

George E. C. Hayes, Washington, D. C.,
for appellee.

Before CAYTON, Chief Judge, and
HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Marvins Credit, Inc., having obtained a
judgment against James P. Calloway, is-
sued a writ of attachment, with annexed
interrogatories, against Howard Univer-
sity.[1] To the interrogatory whether it was
indebted to Calloway, the University an-
swered: "Yes—$102.00 due and payable
on May 11, 1953 by U. S. Treasury check."
Marvins then moved for judgment against
the University in the amount of the admit-
ted credits. The motion was denied and
this appeal followed.[2]

The trial court was of the impression
that the question before it was "whether
the check is subject to condemnation" and
the University in its brief here says the
question is whether it is "subject to having
funds condemned in its hands in the form
of a U. S. Treasury check." We think
these views express a misconception of the
controversy. The check was not seized
by the garnishment. In fact it would seem
that the check was not in existence at the
time of the service of the garnishment or
filing of answer by the University. The
garnishment reached the credits of the
judgment debtor in the hands of the gar-
nishee. The answer admitted credits
which in normal course would be paid in
the form of a Government check.

The question, as we see it, is whether
the University as a garnishee, having ad-
mitted being indebted to the judgment
debtor, is subject to a judgment of re-
covery against it for the amount so ad-
mitted. It contends that it is not because

In the garnishment proceedings there
was testimony that he had left the
employ of the University without notice
and his whereabouts were unknown.

the indebtedness was payable by Government check out of funds in the Treasury. It insists that "the money paid to James Preston Calloway never came · into the coffers of Howard University; was never severed from governmental money and the University was, as a matter of fact, nothing other than the conduit through which the money passed." This argument is based on the fact that although Howard University is a private corporation with all the rights and powers usually vested in private corporations, the United States for many years has annually appropriated large sums of money for its partial support.[3] As a result the University has two separate payrolls for its employees, one for those paid by United States Treasury check out of the Federal appropriation and another for those paid by University check out of funds on deposit in a local bank. Calloway was on the so-called Government payroll.

It is conceded by the University that it employed Calloway as a furniture repairman at a salary fixed by it; that he was not a civil service employee and by reason of his employment acquired no civil service status; that his salary was paid by Treasury check from the Government appropriation upon certification of the University; and that the University has the right to "hire and fire" any employee without consulting any branch of the Federal Government.

From the conceded facts—and there appears to be no dispute of fact in the case—we think it clear that Calloway was an employee of the University and his salary was owed by the University and that when the University was served with the garnishment there was a debt due by it to him. Certainly someone owed Calloway for his services. The United States did not owe him because he was not employed by the Government and he performed no work for the Government. He was hired by the University and worked for it and his wages were due from it. The University freely admits that it is subject to suit and makes no claim to any general exemption from garnishment, and we think the fact that the University intended to pay Calloway from funds made available to it by the Government was no obstacle to a judgment against the University as garnishee for the amount owed by it to the judgment debtor.

Reversed.

3. The Departments of Labor and Health, Education, and Welfare Appropriation Act, 1954 (Public Law 170, 83d Congress, Chapter 296, 1st Sess., H.R. 5246) contains the following item: "For the partial support of Howard University, including personal services and miscellaneous expenses and repairs to buildings and grounds, $2,535,000." U. S. Code Congressional and Administrative News 1953, p. 300. For a somewhat detailed history of the University and its Governmental support, see Maiatico Construction Co. v. United States, 65 App.D.C. 62, 79 F.2d 418.